IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

THOMAS WESLEY SCRUGGS,            )
                                  )
          Plaintiff,              )
                                  )
vs.                               )      No.    03-2518 V
                                  )
THE BOARD OF EDUCATION OF THE     )
MEMPHIS CITY SCHOOLS; JOHNNIE     )
WATSON; and BOB ARCHER            )
                                  )
          Defendants.             )

---

ORDER GRANTING SUMMARY JUDGMENT FOR THE DEFENDANTS

---

The plaintiff, Thomas Wesley Scruggs sued the Board of
Education of the Memphis City Schools, Johnnie Watson, and Bob
Archer (collectively "Memphis City Schools") in a six-count
complaint alleging breach of contract, retaliatory discharge,
violations of 42 U.S.C § 1983, violations of the Americans with
Disabilities Act ("ADA"), violations of the Age Discrimination in
Employment Act ("ADEA"), and intentional infliction of emotional
distress.  The parties have consented to trial before the United
States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Now before
the court is a motion filed by the Memphis City Schools for summary
judgment on all counts.  For the reasons that follow, the Memphis
City Schools' motion for summary judgment is granted.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___5/19/05___

## UNDISPUTED FACTS

For the purposes of this motion, the court finds that the following facts are undisputed:

1.    Scruggs was employed by the Board of Education of the Memphis City Schools as a teacher and football coach at Lester Elementary School beginning in the fall of 1970. From that time until October of 2001, Scruggs served in a variety of teaching positions throughout the Memphis City School system.

2.    Scruggs was employed by the Memphis City Schools as a principal at Oakhaven High School in 1998 and served in this position until October 2001.

3.    In October of 2001, Scruggs applied for and was approved for both disability and sick leave pursuant to the terms and conditions of the Agreement Between the Board of Education of the Memphis City Schools and the Memphis Education Association ("MEA Agreement") due to existing medical conditions, which included circulatory problems, high blood pressure, high cholesterol, hypertension, and stress. The terms of Scruggs' sick leave and his subsequent assignment were governed by this collective bargaining agreement.

4.    On April 5, 2002, Scruggs extended his sick leave until October 15, 2002, at which time his sick leave expired.

5.    On or about mid-June 2002, Robert Archer, the Associate

2

Superintendent for the Board of Education, contacted Scruggs to inquire as to whether Scruggs would be returning to his position as principal of Oakhaven High School on July 1, 2002. Scruggs informed Archer that he would return to his position after receiving a release from his physician. Scruggs' physician approved his return to work on September 10, 2002.

6. Scruggs presented Memphis City Schools a letter from his physician on or about September 10, 2002 releasing him to return to work. At that time, Scruggs had a meeting with Robert Mathes in Human Resources at the Board of Education regarding an assignment for 2002.

7. Memphis City Schools subsequently offered Scruggs a position as an assistant principal at Central High School and a teaching position at White Station High School. Scruggs' salary was to be frozen for one year at its previous level regardless of the position taken.

8. Scruggs declined the positions that were offered to him and resigned from his employment with the Board of Education on September 15, 2002.

9. On September 23, 2002, Scruggs filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against because of a disability. The EEOC dismissed the charge finding that Scruggs failed to allege a

3

disability under the ADA.

10. Memphis City Schools appointed Marion Brewer to be the principal of Oakhaven High School for the 2002 school year prior to time Scruggs was released to return to work. Brewer was 59 years old at the time of her appointment.

<u>ANALYSIS</u>

I.  <u>Summary Judgment Standard</u>

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe,* 8 F.3d at 378. This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some

4

metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, "this court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251-53). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;  there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994).

II.  <u>Retaliatory Discharge (Count Two)</u>

Memphis City Schools contend that it is entitled to summary judgment on Scruggs' retaliatory discharge claim because (1) Scruggs failed to raise a claim based on retaliatory discharge in his administrative charge filed with the EEOC, and (2) because Scruggs failed to establish a prima facie case of retaliation. Scruggs did not respond to these contentions.

"It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). Retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991). Here, Scruggs failed to include claims of retaliation in his EEOC charge. Accordingly, this court does not have subject matter jurisdiction to hear Scruggs' claim for retaliatory discharge.

Assuming the court had jurisdiction to hear this claim, summary judgment would still be proper. Claims of retaliatory discharge are generally subject to the same analysis as claims brought under Title VII of the Civil Rights Act of 1964, as amended. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.

6

1992) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)). Thus, the evidentiary framework enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) applies to claims for retaliatory discharge.

There are three basic steps in the *McDonnell Douglas/Burdine* analysis. First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff does so, then the burden of production shifts to the defendant to demonstrate that there were legitimate, non-discriminatory reasons for the actions of which plaintiff complains. Finally, if the defendant produces such evidence, the burden of production shifts back to the plaintiff, who must demonstrate that the reasons offered are merely pretextual, and are not the true reasons for the actions taken. At all times, the ultimate burden of persuasion lies with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

To establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in a protected activity; (2) that the defendant knew of the exercise of the protected activity; (3) that the defendant took an employment action that was adverse to the plaintiff; and (4) that there existed a causal connection between the protected activity and the adverse employment action.

7

*See E.E.O.C. v. Avery Denison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1997)).

In this case, Scruggs fails to allege that he was engaged in a protected activity for which Memphis City Schools retaliated against him. Instead, Scruggs bases his claim on the fact that he and Robert Archer had philosophical differences concerning the appropriate type of curriculum that should be taught in high schools. Having a difference of opinion regarding high school curriculum does not qualify as a protected activity. Thus, Scruggs has failed to establish a prima facie case of retaliation. Accordingly, Memphis City Schools' motion for summary judgment on Scruggs' claim for retaliatory discharge is granted.

III.  <u>42 U.S.C. § 1983 (Count Three)</u>

Scruggs also alleges violations of procedural due process under 42 U.S.C. § 1983. He contends that Memphis City Schools deprived him of his position as principal of Oakhaven High School without cause and without due process. Memphis City Schools insists that it is entitled to summary judgment on Scruggs' due process claim because Scruggs did not have a property interest in his employment as principal of Oakhaven High School.

To prevail on a claim for a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must show initially that he had a constitutionally protected liberty or property

8

interest. *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Property interests protected by the United States Constitution are created by an independent source, such as state law or private contract. *Id*. at 577. Government employment amounts to a protected property interest when the employee has a legitimate expectation of continued employment. *Curby v. Archon*, 216 F.3d 549, 553 (6th Cir. 2000).

Scruggs relies on *Sharp v. Lindsey*, 285 F.3d 479 (6th Cir. 2002) to establish a property interest in his continued employment as principal of Oakhaven High School. In *Sharp*, a high school principal was reassigned to a position as a math tutor due to behavior that the superintendent considered problematic. *Id*. at 484. The reassigned principal brought suit under 42 U.S.C. § 1983 claiming he had a protected property interest in his position as principal. *Id*. The court was unable to find a Tennessee statute that afforded a principal a protected property interest in his or her job. *Id*. at 487. Tenn. Code Ann. § 49-5-501 provided that administrative and supervisory personnel such as principals "shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed." *Id*. Thus, the Tennessee legislature did not intend that a principal should have a statutory entitlement to his principalship. *Id*. Despite this holding, the court concluded that the reassigned principal had a

9

property interest in his principal position by virtue of a written employment contract which specified a term of employment as a principal. *Id.*

Unlike the principal in *Sharp*, Scruggs did not have a principal employment contract that gave him a property interest in his principal position. Scruggs, however, claims that his property interest derives from the MEA Agreement. Scruggs alleges that the MEA Agreement required Memphis City Schools to place him back in his position as principal of Oakhaven when he returned from sick leave, and, therefore, Scruggs insists that he had a legitimate expectation of retaining his position as principal.

Article XIV, Section G, of the MEA agreement, entitled "Transfer and Assignment," does not give a person in the position of a principal an expectation of continued employment in that position. Section G states:

> The filling of the positions of principals, assistant principals, instructional supervisors and mental health/support professionals including promotion, demotion, transfer, assignment, layoff and recall shall not be for arbitrary and capricious reasons; however, such personnel actions shall be the sole discretion of the Superintendent and shall not be subject to grievance or arbitration.

Instead, this provision of the agreement allows the Superintendent, in his discretion, to assign and/or demote a principal to another position, so long as his reasons are not arbitrary and capricious.

10

Likewise, as set forth by the court in *Sharp*, Tenn. Code Ann. § 49-5-510, entitled "Transfers Within System," does not provide a legitimate expectation of continued employment for principals. This section states:

> The superintendent, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed.

Tenn. Code Ann. § 49-5-510. "Teacher" is defined by the Tennessee Code to include principals. Tenn. Code Ann. § 49-5-501(10). Under this statute, tenure is directly related to the job as a teacher and not to a particular location or title; therefore, a teacher and/or principal does not have a legitimate expectation of continued employment in a particular position which would amount to a property interest. *Coe v. Bogart*, 519 F.2d 10, 12-13 (6th Cir. 1975). *See also Sharp v. Lindsay*, 285 F.3d 479 (6th Cir. 2002).

Scruggs is unable to establish a property interest in his employment as principal of Oakhaven High School. Consequently, Scruggs' cannot prevail on his claim for violations of due process. Accordingly, Memphis City Schools' motion for summary judgment is granted as to this claim.

IV.   Americans with Disabilities Act (Count Four)

Scruggs contends Memphis City Schools discriminated against him in violation of the ADA because it failed to make a reasonable

11

accommodation to address his disability.   Memphis City Schools maintains that summary judgment should be granted as to this contention because Scruggs has failed to allege a disability under the ADA.

The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability" because of his disability. 42 U.S.C. § 12112(a).  The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To maintain a prima facie case under the ADA, the plaintiff must establish: (1) that he has a disability as defined in 42 U.S.C. § 12102(2); (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) that he has suffered an adverse employment action because of his disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995).

Section 12102(2) defines a disability as:  (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  The term "substantially limits" is defined as

12

"unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared with the average person that can perform that same life activity. 29 C.F.R. § 1630.2(j)(1).   In determining whether an individual is substantially limited in a major life activity, the court is directed to consider the "nature and severity of the impairment," its "duration or expected duration," and the "permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 U.S.C. § 1630.2(j)(2).

In this case, Scruggs has failed to establish that he was suffering from a disability which substantially limited his ability to work.   The Supreme Court has "assumed without deciding that 'working' is a major life activity for purposes of the ADA. . . ." *Cartwright v. Lockheed Martin Utility Services, Inc.*, 2002 WL 1461753 (6th Cir. 2002).   To be substantially limited in the major life activity of working, a plaintiff must be unable to perform a broad class of jobs. *Id*.   Here, Scruggs alleges discrimination after he returned to work at a point in time when Scruggs was no longer unable to work.   Scruggs has offered no evidence that creates a genuine issue of material fact as to whether he could not perform either a class of jobs or a broad range of jobs in various

classes.   Therefore,   he   has   not   demonstrated   that   he   was significantly limited in the life activity of working.

Furthermore,   assuming   that   Scruggs   was   disabled,   his disability was only temporary as his physician released him to return to work.   The Supreme Court has held that, "an impairment that   is   corrected   does   not   substantially   limit   a   major   life activity for purposes of the ADA." *Williams v. Stark County Board of County Commissioners*, 7 Fed. Appx. 441 (6th Cir. 2001).   Scruggs therefore did not suffer from a disability under the ADA as his impairment was corrected as evidenced by his physician's release to return to work.

Because Scruggs fails to make a prima facie case under the ADA and has failed to proffer any evidence which creates a genuine issue of material fact in regard to whether he was disabled under the ADA, Memphis City Schools' motion for summary judgment is granted as to this contention.

V.   Age Discrimination in Employment Act (Count Five)

Scruggs claims that by replacing him with a significantly younger individual, Memphis City Schools discriminated against him with respect to the terms, conditions, and privileges of employment because of his age.   Memphis City Schools contends that summary judgment should be granted because Scruggs fails to make out a prima facie case under the ADEA.

14

To establish a claim under the ADEA the plaintiff must first establish a prima facie case of discrimination by introducing evidence sufficient to show: (1) plaintiff was a member of the protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position; (4) plaintiff was replaced by a younger worker. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994). By establishing the necessary elements of the prima facie case the plaintiff, "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1081 (6th Cir. 1994)(quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Once the plaintiff has made a prima facie case, the burden shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If the defendant meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason proffered by the employer was not its true reason but merely a pretext for discrimination. *Manzer*, 25 F.3d at 1329.

Memphis City Schools replaced Scruggs as principal of Oakhaven

15

High School with Marion Brewer.   The difference in age between Scruggs and Brewer is less than six years.   The Sixth Circuit has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003). Here, Scruggs has presented no direct evidence that Memphis City Schools considered age in its decision to replace him as principal. Therefore, Scruggs has failed to make a prima facie case under the ADEA by failing to show that he was replaced by a significantly younger person.

In addition, Scruggs has failed to establish that he suffered from an adverse employment action.   Memphis City Schools offered Scruggs another administrator position within the school system at the same salary.   Instead of accepting the offer, Scruggs chose to voluntarily retire.

Accordingly, Memphis City Schools' motion for summary judgment in regard to Scruggs' ADEA claim is granted as Scruggs has failed to make out a prima facie case under the ADEA and has not proffered any evidence that indicates that there is a genuine issue of material fact with the respect to his ADEA claim.

VI.   <u>Intentional Infliction of Emotional Distress (Count VI)</u>

Scruggs maintains that the actions of Memphis City Schools in

16

replacing him as principal of Oakhaven High School was designed to inflict emotional distress upon him and that he actually suffered from emotional distress. Memphis City Schools contends that Scruggs has failed to make out a prima facie case for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. *Bain v. Well*, 936 S.W.2d 618, 622 (Tenn.) Furthermore, a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999).

In this case, Memphis City Schools' actions in replacing Scruggs as principal of Oakhaven High School are not of the type that the court considers to be atrocious or intolerable. Scruggs offers no evidence that Memphis City Schools' actions were intentionally, maliciously or willfully designed to inflict emotional distress upon him. Furthermore, Scruggs fails to offer any evidence that he suffered from severe emotional distress

17

because of Memphis City Schools' actions.

Accordingly, Memphis City Schools' motion for summary judgment regarding the claim of intentional infliction of emotional distress is granted.

VII.   Breach of Contract (Count One)

Scruggs alleges that Memphis City Schools actions in replacing him as principal of Oakhaven High School were in violation of the MEA Agreement.  In particular, Scruggs contends that Memphis City Schools' failure to reassign him to a "comparable position" was in direct contradiction to the sick leave policies outlined in the Article XV, Section A of the MEA Agreement and thus constitutes a breach of contract.  Memphis City Schools insists that Scruggs has misread the MEA Agreement and that the actions taken by it were not in violation of the terms and conditions of the agreement.

In this motion for summary judgment, there are two sections of the MEA Agreement at issue.  First, Article XIV, Section G, which covers transfers and assignments, states:

> The filling of the positions of principals, assistant principals, instructional supervisors and mental health/support professionals including promotion, demotion, transfer, assignment, layoff and recall shall not be for arbitrary and capricious reasons; however, such personnel actions shall be the sole discretion of the Superintendent and shall not be subject to grievance or arbitration.

Based on this section, Memphis City Schools did not breach the

18

agreement.  Superintendent Watson was within his rights to assign another principal to Oakhaven, so long as his reasons for doing so were not arbitrary and capricious.

Scruggs contends, however, that Watson's decision was arbitrary and capricious because it was based on political motivation.  Scruggs has offered statements made during Watson's deposition which tend to show that Watson had a political motivation to post the position for principal at East High School rather than appoint someone.  However, Scruggs has offered no evidence, besides a personal disagreement with Robert Archer concerning curriculum, to show that his removal as principal by Superintendent Watson at Oakhaven was based on a political motivation.  Thus, there is no genuine issue of fact as to whether Memphis City Schools' decision to transfer Scruggs was arbitrary and capricious.  Instead, Watson, in his discretion, decided to appoint a full-time permanent principal at Oakhaven because his fear that the school would suffer if a principal was not appointed before Scruggs returned.  Watson's decision is also supported by Tenn. Code Ann. § 49-5-510 which states that "when necessary to the efficient operation of the school system, [the superintendent] may transfer a teacher from one location to another within the school system . . . ."

The second section of the MEA Agreement at issue is Article

XV, Section A (4), which covers leaves of absence.    This section
states:

> The professional employee on leave under this section
> shall return to his/her previously assigned full-time
> position.  If the previously assigned position does
> not exist, the professional employee shall be assigned to a
> comparable position.  All rights and privileges of this
> article are contingent upon the professional employee's
> return to the system upon expiration of leave.

Pursuant to this section, Scruggs contends that because he was on
medically-approved sick leave, Memphis City Schools had an
obligation to return him to his position as principal at the time
of his return if the position still existed or to a comparable
position within the school system.  Scruggs relies on Tenn. Code
Ann. § 49-5-705 to support his position.  This section states:

> Upon return of the teacher within the twelve (12) months,
> the interim teacher shall relinquish the position, and
> the teacher shall return to the position.  If the leave
> exceeds twelve (12) months, the teacher shall be placed
> in the same or a comparable position upon return from
> leave.

Tenn. Code Ann. § 49-5-705.

At the time Scruggs was released to return to work by his
physician, the principal position at Oakhaven no longer existed.
The court interprets Article XV, Section 4 to allow a person  who
has been on approved sick leave to return to their previous
position only if it is still available, that is, if it still
exists.  In this case, Superintendent Watson had appointed Marion

20

Brewer as the full-time permanent principal at Oakhaven before Scruggs was allowed to return to work. Section 49-5-705 of the Tennessee Code is no help to Scruggs' position either as it requires only that an *interim* teacher relinquish the position upon the return of a teacher and/or principal. In this case, Marion Brewer was appointed as a full-time permanent principal rather than an interim principal.

Given that the court has opined that the position at Oakhaven no longer existed, the only thing left to determine is whether Memphis City Schools violated the MEA agreement by failing to offer Scruggs a comparable position. Scruggs contends that there is a general issue of material fact as to whether Memphis City Schools offered him a comparable position. According to Scruggs, at a minimum, a comparable position to the one he previously held as principal of Oakhaven was another principalship.

Unfortunately, the term "comparable position" is left undefined by the MEA Agreement. The court is thus left with the task of interpreting the meaning of this ambiguous term. To resolve this ambiguity, the court looks outside the agreement to the Tennessee Teachers' Tenure Act, Tenn. Code Ann. § 49-5-501 *et. seq.*, from which Scruggs heavily relies in support of his arguments. Section 49-5-501(10) states:

"Teacher" includes teachers, supervisors, principals,

21

superintendents, and all other certificated personnel employed by any local board of education, for service to the public, elementary and secondary schools in Tennessee, supported in whole or in part by state and federal funds.

Tenn. Code Ann. § 49-5-501(10). Under this section, it is clear that the Tennessee legislature intended that a principal position be comparable to that of a teacher. *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981). In interpreting the Teachers' Tenure Act, the Supreme Court of Tennessee stated that:

> The legislative intent expressed in these provisions is that the dismissal or transfer of supervisors and administrators should be treated under the Act in the same manner as dismissals or transfers of teachers. For example, the firing of a principal is to be viewed just as the firing of a teacher . . . . *[a]nd a shift from principal to teacher or vice versa . . . is to viewed just as a transfer of a teacher from one type of work to another.*

*Id.* (emphasis added). Based on the language of the statute and the Tennessee Supreme Court's interpretation, the court finds as a matter of law that a transfer from a principal position to a teacher position is an assignment to a comparable position.

Thus, Scruggs' contention that a principalship was the only comparable position to the one he previously held fails. Consequently, this finding by the court makes Scruggs' proffered question of fact regarding whether there was a principal position open at East High School moot. The undisputed facts show that Memphis City Schools offered Scruggs the "comparable positions" of

22

an assistant principal at Central High School and a teaching position at White Station High School.  Scruggs refused to accept either position.

Accordingly, Scruggs has failed to demonstrate that there are genuine issues of material fact regarding his breach of contract claim.  Thus, Memphis City Schools in entitled to summary judgment on this issue.

## CONCLUSION

For the reasons stated above, this court finds that Scruggs has failed to show that there are genuine issues of material fact at issue in this case.  The evidence presented by Scruggs indicates that he is unable to make a prima facie case for his claims under the ADA, ADEA, and 42 U.S.C § 1983 and for claims of retaliatory discharge and intentional infliction of emotional distress.  As a matter of law, Scruggs' claim for breach of contract fails as he has not raised any issues of fact that demonstrate that the case should be submitted to a jury.  Accordingly, Memphis City Schools is entitled to a judgment as a matter of law.

IT IS SO ORDERED this 16th day of May, 2005.


_____
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

23

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 59 in case 2:03-CV-02518 was distributed by fax, mail, or direct printing on May 19, 2005 to the parties listed.

Ernest G. Kelly
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Paul Forrest Craig
LAW OFFICE OF PAUL FORREST CRAIG
100 N. Main St.
Ste. 923
Memphis, TN 38103

Prince C. Chambliss
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Michael R. Marshall
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Honorable Diane Vescovo
US DISTRICT COURT